Dohoney, J.
The Plaintiff seeks to recover damages in a multi-count complaint for certain actions arising out of the sale of a motor vehicle by the Defendant to the Plaintiff. The Trial Justice found for the Plaintiff on Count I (Misrepresentation) and Count III (Breach of Implied Warranty of Merchantability) and for the Defendant on Count II (Breach of Express Warranty), Count IV (Breach of Contract) and Count VI (Violation of G.L.M. Chapter 93A. The Trial Justice considered Count V (Fraud and Deceit) merged with Count I (Misrepresentation). The Defendant has appealed principally on the grounds that the Trial J ustice improperly ordered a rescission of the transaction, found that the Defendant was a “merchant” under G.L.M. Chapter 106, Section 2-104, and found an actionable misrepresentation with respect to certain statements as to mileage.
From the Report we learn the following. On March 5, 1987, the Plaintiff purchased a 1979 Mercedes-Benz from the Defendant for a price of $12,500.00. The Defendant was generally engaged in the business of selling used cars at a business address of 878 High Street, Holyoke, for a corporation named T. & M. Motors, Inc. However, all of the contacts between the Plaintiff and the Defendant were at his home on Dartmouth Street, a residential area in Holyoke. The Defendant told the Plaintiff that he was selling the car as a private party, that it was in excellent condition, that it had regularly been maintained and had a written service record and that Mercedes-Benz vehicles were reported to run up to 500,000 miles without major problems.
After purchasing the vehicle, the Plaintiff experienced difficulty with an oil leak, bad starting, “dieselling”, and sluggish power. After some discussion with the Defendant, the Plaintiff brought the vehicle to Lewbar Motors, Inc. They replaced a seal, the water pump, certain gaskets, and belts. This cost was *178 $307.02. At this juncture, the Plaintiff learned for the first time that Lewbar Motors had done a compression test for the Defendant about ten days before the sale and two cylinders had very low compression. Although the Defendant had produced a written service record of the vehicle and showed it to the Plaintiff prior to the sale, the Defendant did not disclose the findings about the low compression to the Plaintiff.
1. RESCISSION: The principal issue is the action of the Trial Justice on Count I alleging misrepresentation. The judge made written findings setting forth that the Defendant was responsible for misrepresentation and that the Plaintiff is “entitled to a full rescission of the purchase price,” and certain out of pocket expenses. Thereafter the Trial Justice entered j udgment for $ 17,156.06 which was calculated at $12,800.00 for the return of the purchase price and $4,356.05 which was triple the out-of-pocket-expenses.
Rescission restores the Plaintiff to the status quo. NOLAN, MASS. PRACT., Vol 31, Chap. 23, Sec. 403 (1975). The remedy is grounded in the general principles of equity jurisprudence. STORY’S EQUITY JURISPRUDENCE, 14th Ed., Vol 2, Sec. 931 (1918). “General” equityjurisdiction encompasses equity powers to the nature and extent held by the English Court and is limited only by the principles of equity jurisprudence themselves. In contrast, “special” equityjurisdiction encompasses equitable actions which were not cognizable under traditional principles of equity and, therefore, do not fall under the general equityjurisdiction of the courts. Foster v. Evans, 384 Mass. 687 (1981). The distinction becomes important in discerning legislative grants of equity powers.
Massachusetts courts originally were courts of common law and possessed no jurisdiction in equity. NOLAN, MASS. PRACT., Vol 31, Chap. 1, Sec. 3. Acts of 1877, Chap. 178, now codified in G.L.M. Chap. 214, § 1, conferred general equity jurisdiction on the Supreme Judicial Court without reference to the existence of an adequate remedy at law. Acts of 1883, Chap. 223, § 1 extended the general equityjurisdiction to the Superior Courts. Under G.L.M. Chap. 214, § 3, special equity powers are conferred on the Supreme Judicial Court and the Superior Court. Acts of 1963, Chap. 820, § 1, codified as G.L.M. Chap. 215, § 6 conferred general but not special equity powers on the Probate Court. In addition, G.L.M. Chap. 185C, § 3 confers equityjurisdiction on the Housing Court.
Thus, for most courts in Massachusetts, equity has developed through broad general statutory grants of equityjurisdiction. However, this has not been true in the District Court. Generally, the District Court lacks equityjurisdiction. See Morris v. Ramos, 1988 Mass. App. Div. 16; Paquin v. Arruda, 1983 Mass. App. Div. 276 where the Court stated
We note in the report that the judge ordered that the car be returned (from buyer to seller after the money damages had been paid, in effect rescinding the sale. An order of this sort is an attempt to provide equitable relief. See 27 Am. Jur. 2nd Equity Sec. 105. Since it is impermissible to afford equitable relief, the entire judgment becomes tainted. Accordingly, the matters must be returned to the trial court for the purpose of assessing damages only.
See also, PERLIN & CONNORS, HANDBOOK OF CIVIL PROCEDURE IN THE MASSACHUSETTS DISTRICT COURTS. 1985 Ann. Supp., Chap II, Sec. 1(a), fn. 0.4.
The general grant of authority to the District Court limits civil jurisdiction to actions where only money damages are sought. See G.L.M. Chap. 218, § 19. *179 District Courts have received equity jurisdiction only through piecemeal legislation. See G.L.M, Chap, 218, § 19; Chap. 218, § 19C, Chap. 186, § 14, and Chap. 209A, § 2. While equitable actions may not be heard, equitable defenses maybe set up in an action at law in the District Court pursuant to G.L.M. Chap. 231, § 31.
Thus, applying the above discussion to the facts at issue, we find the Trial Justice improperly ordered a rescission, an equitable remedy not within the jurisdiction of the District Court, and we must allow the Report in this respect.
Careful attention should bapaid to the distinction between “rescission” as an equitable remedy and. “revocation of acceptance” as a legal remedy under various provisions of law. The most obvious revocation of acceptance provision is G.L.M. Chap. 106, Sec. 2-608. An interesting case in this area is Peckham v. Larsen Chevrolet-Buick-Oldsmobile, 99 Idaho 675, 587 P. 2nd 816 (1978), wherein the Court stated
As noted, this action was.originally brought as one for ‘rescission’,and Larsen Chevrolet and General Motors argue that because there is no provision in the Uniform Commercial Code for this remedy, it is unavailable to the buyer. The Code has, in most instances, abandoned the use of the term ‘rescission’ in favor of terms such as ‘cancellation or termination.’ However, it has been held, and the commentators agree, that rescission and revocation of acceptance amount, to the same thing under the Uniform Commercial Code, particularly since cancellation is a remedy available to a buyer who has established justificable grounds for revocation of acceptance.
See also Sudol v. Rudy Papa Motors, 175 N.J. Super 238, 417 A.2d (N.J. Dist. Ct.) 1133 (1980) where a court of apparent comparable jurisdiction as our own District Court was faced with the same issue of the return of the purchase price of an automobile. The New Jersey Court stated
Although the county district court still has no jurisdiction to hear matters in which the principal relief demanded in the complaint is equitable, it does have the power to grant such relief as it is authorized by statute. Indeed, such relief is not truly “equitable” in the sense that court is not “doing in good conscience what ought to be done," but has done that which is required by the Legislature.
The Court then went on to discuss “revocation of acceptance.”
A second remedy which could be equated with revocation of acceptance and thus determined to be a legal remedy is G.L.M. Chap. 90, Sec. 7N. This statute permits the return of a motor vehicle if it fails to pass inspection and other criteria are met. Presumably, after a return of the vehicle in compliance with the statute, an action at law would lie for the purchase price. Lastly, an interesting issue is presented by the procedures of G.L.M. Chap. 90, § 7WA (8), the so-called Lemon Law, which provides that a buyer may “rescind” and obtain a refund of the purchase price. This remedy was not available to our Plaintiff since the statute was effective July 1,1988, but raises the issue of the jurisdiction of the District Court Department.
In our case the Plaintiff has neither asserted nor proven a "revocation of acceptance.”
II. MISREPRESENTATION
The second issue presented is whether certain non-disclosures of the compression matter amount to fraud. On occasion, non-disclosure may not be actionable. See Swinton v. Whitinsville Savings Bank, 311 Mass. 677 (1942). However, once a party makes a partial disclosure, there may be a duty to make a complete disclosure. See Kannavos v. Annimo, 356 Mass. 42 (1969). Here, the *180 Defendant showed what reasonably purported to be a complete service record but did not include the low compression readings. Thus, the Trial Justice was warranted in concluding that there was actionable misrepresentation.
In view of this discussion, it is not necessary to determine if the reference to the ability to run for 500,000 miles was actionable misrepresentation or mere puffing.
III. BREACH OF WARRANTY OF MERCHANTABILITY
The third issue is whether there was sufficient evidence to warrant a finding of a breach of warranty of merchantability. G.L.M. Chap. 106, Sec. 2-314c provides that the goods sold by a “merchant” must be “fit for the ordinary purposes for which such goods are used.”
Here there was sufficient evidence that the Defendant was a merchant. That term is defined in G.L.M. Chap. 106, Sec. 2-104 as one “who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar .. . to the goods involved.” The Defendant was clearly engaged in the business and cannot evade the finding of the Trial Justice by asserting he was really a “private” individual. There was sufficient evidence for the finding of the Trial Justice.
As to the breach, the low compression and black smoke are sufficient evidence of the breach.
IV. CONCLUSION
Thus, the Report is Allowed. The Judgment regarding damages only, as to Count I is vacated and the case is remanded to the primary court for a recomputation of damages consistent with this opinion. All other Counts should remain the same except to state recovery should be limited to one count.